CLEMENCIA CRUZ, Plaintiff, Appellee, and Appellant, *v.* HEIRS OF JOSÉ FELIPE GONZÁLEZ, ETC., Defendants, Appellants, and Appellees.

No. 10166. Argued November 13, 1950.—Decided March 21, 1951.

A. *Miranda Esteves* and *R. Martínez Alvarez* for appellants-appellees, Tartak-Bejos. *José M. Valentín Esteves* for appellants-appellees, Sapia-Román. *Felipe B. Montalvo* and *Heriberto Torres Solá* for appellee-appellant.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The defendants, Cándida Román and the heirs of her husband Ramón Sapia and Salibe Tartak, as well as the plaintiff, took separate appeals from the judgment entered in the present case. The defendants appealed from the entire judgment entered against them; and the plaintiff, from the part that dismissed the claim for the fruits yielded or which should have been yielded by the farms in the possession of the defendants Salibe Tartak and Bernarda Bejos which, according to the judgment, belong separately to the plaintiff. The latter also appealed from the pronouncement granting the counterclaim filed by the latter defendants, as well as from that part of the judgment granting the counterclaim of the Rigual-Rubio spouses.

As found by the lower court, the plaintiff has been living in New York City for many years. There she met José Felipe González, whom she married in Philadelphia in 1923, establishing their residence in New York City. About the date of the marriage, plaintiff's savings, which she had accumulated while single, amounted to $12,000. Besides, her mother had lent her before her marriage the amount of $8,000 which sum she delivered along with her savings, to her husband in order to invest it in real estate in Puerto Rico. With that money González purchased, among others, the property marked in the complaint with the letter "C" which at present is divided into properties 4002 and 6749, recorded in the name of the defendants Salibe Tartak and his wife, Bernarda Bejos. When he acquired these properties, González did not set forth that the money with which he had purchased them belonged separately to his wife, all the properties being recorded as belonging to the conjugal partnership. Subsequently, on February 1, 1933, the marriage between the plaintiff and her husband was dissolved by decree of divorce entered in New York, González having moved his residence to Puerto Rico. After the divorce, González tried to obtain a power of attorney from his ex-wife, without any positive result. In the face of this refusal, González filed in the district court suit No. 32598 for the execution of a deed for liquidation of community property. He alleged in substance that he had bought from his ex-wife her share in the properties of the extinct conjugal partnership; that he had paid the price in money and jewelry and that in view of her refusal to execute the corresponding deed, he prayed for judgment ordering her to execute said deed and that if she failed to do so within the term given her by the court, the marshal should execute same.

The summons was issued and delivered for service to a third person who returned it unserved declaring under oath that he had taken the pertinent steps to find Clemencia Cruz —without setting forth which had been said steps—and that

he had been informed—without saying who had given him such information—that the defendant lived in New York.

On the basis of this summons the then plaintiff requested that the defendant be summoned by publication and to that effect stated under oath that he did not know her domicile in New York, when the fact was that he corresponded with her and knew her postal address.

On the basis of such oath and of the unserved summons, publication was ordered and finally default judgment was entered, notwithstanding that the defendant's properties had not been attached, despite the fact that it was a personal action and that she did not live in Puerto Rico.

The judgment ordered the defendant to execute the deed conveying to the plaintiff her share in the community property and provided that if the aforesaid deed was not executed within the fifteen days following the date on which said judgment became final and unappealable, the marshal would execute said deed.

Notice of the judgment was given by publication during August 16 and 26 and September 6 and 16, 1940, and 17 days after the last publication, the marshal, upon motion by the plaintiff, executed the deed conveying to the latter defendant's interest in said properties. Upon presentation of the deed in the registry of property the properties were recorded in plaintiff's favor and as several farms were conveyed in the document, the Registrar made the full record as to property No. 4196, page 52 over, volume 225 of North Santurce, eleventh record, and brief records as to the remaining properties.

González, by then owner of the properties according to the registry, sold, among others, properties Nos. 4002 and 6749 to María Luisa Amador, who sold them to Cándido Román and her husband Ramón Sapia, who on their turn sold them to Salibe Tartak and his wife, all of whom recorded their respective titles in the registry of property.

At this stage of the proceedings, Clemencia Cruz filed in 1942 the original complaint in this suit, which was amended on September 28, 1942. The aforesaid amended complaint includes, besides the defendants-appellants, certain other parties who did not appeal from the judgment and to whom we do not have to refer for the purposes of this opinion.

In the first cause of action the nullity of the title held by the defendants Salibe Tartak and his wife Bernarda Bejos to the two properties in controversy is sought; and in the second, the plaintiff claimed the fruits yielded or which should have been yielded by the above-mentioned properties during the time that they were in the possession of the defendants.

Plaintiff's cause of action rests on: (1) that the court did not acquire jurisdiction over her in action 32598 because of the defective summons by publication; and (2) that the judgment rendered in said action was executed before being final and unappealable, since the deed of liquidation was executed 17 days after the judgment was last served by publication.

In their answer the defendants Tartak-Bejos alleged that the properties under consideration belonged separately to José F. González and that they were third-party mortgagees since they acquired said properties from a person who, according to the registry, appeared as owner, no defect whatsoever invalidating the seller's title clearly appearing therefrom; and as a counterclaim, in the event that the complaint were granted as to them, the defendants Salibe Tartak and Bernarda Bejos alleged that they paid $4,600 to María Teresa Portell for a mortgage credit in that amount, constituted by the spouses José Felipe González and Clemencia Cruz on the properties acquired by said defendants, plus $50 which they paid as attorney's fees and other expenses incurred in the cancellation of the mortgage.

After a trial on the merits the lower court declared null and void the judgment entered in civil case No. 32598 above

mentioned on the ground that it had been entered without jurisdiction over the defendant.[1] It likewise declared that the defendants were not third parties because it appeared from the registry that the judgment was executed before being final and unappealable. Therefore, it declared null and void José F. González' title acquired by virtue of the judgment referred to and ordered the cancellation of all the other records derived from José F. González' title, including the records in favor of the defendants Tartak-Bejos. In line with said pronouncement the lower court granted the counterclaim. That is why the defendants Tartak-Bejos appealed from the judgment as a whole since if it is reversed as to the nullity pronouncement, the provision as to the counterclaim would necessarily be set aside. The plaintiff on her turn appealed from the pronouncement regarding the counterclaims filed by the Tartak-Bejos and by the Rigual-Rubio spouses and from the refusal to grant her the fruits produced or which should have been produced by the farms in the possession of the defendants-appellants.

We shall proceed to consider jointly the appeal taken by the defendants Tartak-Bejos and by Cándida Román and the Heirs of Ramón Sapia since they raise identical questions. We shall then decide plaintiff's appeal.

 Property No. 4002 hereinbefore referred to was recorded in the registry in favor of the conjugal partnership constituted by José F. González and Clemencia Cruz. Subsequently, said spouses, through their attorney-in-fact, segregated property No. 6749 from No. 4002, both properties remaining recorded in favor of the conjugal partnership. By reason of suit No. 32598 said properties, among others, were awarded to José F. González. However, when deed No. 5 of October 3, 1940 was executed before Notary Justo A. Casa-

---

[1] We are not concerned here with this ground for nullity because that defect does not appear from the registry—*Lizardi* v. *Caballero*, 65 P.R.R. 77—the same prejudicing the defendant heirs of José F. González since they are unable to have, as such heirs, the status of third parties.

blanca, the fact that property No. 6749 appeared in the registry as segregated from property No. 4002, was not taken into account and the latter property was described as it appeared prior to the segregation, property No. 6749 not being described in the deed. For that reason and in order that property No. 6749 appeared recorded in favor of José F. González, explanatory deed No. 6 of November 14, 1940 was executed before the same notary, and in this manner, by the tenth record, said property was recorded in favor of José F. González. Said tenth record insofar as pertinent reads:

". . . According to the first record the spouses José Felipe González and Clemencia Cruz own this property. Said spouses were divorced, as verified in the Registry; and in the proceeding for liquidation of community property instituted in the District Court of San Juan under number thirty-two thousand five hundred and ninety-eight, by José F. González against Clemencia C. González, *née* Clemencia C. Cruz, after all legal proceedings, Juan R. Molina, the marshal of said court, in compliance with the final and unappealable judgment of July twenty-six, one thousand nine hundred and forty, conveys that portion of this property, along with other properties not sought to be recorded, to José Felipe González, divorced, as appears from deed five, explained by number six, executed on October three and November fourteen last, Notary Justo A. Casablanca, set forth at length in the sixteenth entry of property four thousand and two, duplicate, page one hundred and forty-seven, volume two hundred and nine of North Santurce. . ."

It will be noted that the record, the pertinent part of which we have just copied, recites that the deed of award in favor of José F. González is set forth at length in the sixteenth entry of property 4002 at page 147 of volume 209 of North Santurce. But no certified copy of entry No. 16 of property No. 4002 was presented in evidence at the trial. Had it been presented, it would have been realized that it recites that the deed of award of community property in which the details of suit No. 32598 appear, was set forth at length in record No. 11 of property No. 4196 at p. 52, over,

of volume 225 of North Santurce, which, insofar as pertinent, recites:

". . . and the court, in view of the pleadings and evidence cited, granted the complaint and entered judgment on July 26 last and ordered the defendant to execute a deed of liquidation of community property in favor of the plaintiff within fifteen days after the judgment became final and unappealable, providing that if she failed to do so the marshal would execute said deed. Marshal Juan R. Molina, at plaintiff's request, proceeded to serve the judgment by publication in the newspaper El País for the statutory period, said judgment becoming final and unappealable, and the fifteen days from publication, within which the defendant was bound to execute the aforesaid deed in favor of the plaintiff, having elapsed without the defendant having done so, as shown by plaintiff's motion, the marshal, in compliance with the judgment and subrogated in the person of the defendant, conveys to José Felipe González, of legal age, divorced, and resident of this city, this property and six other properties. . ."

The question for decision now is whether José F. González' defective title clearly appears from the eleventh entry just copied, § 34 of the Mortgage Law;[2] *Ayllón et al.* v. *González et al.*, 28 P.R.R. 61; *People* v. *Riera*, 27 P.R.R. 1 and *Lizardi* v. *Caballero*, 65 P.R.R. 77. An examination of that entry discloses that the deed of liquidation of community property should have been executed ". . . within fifteen days after the judgment became final and unappealable. . ." and that "Marshal Juan R. Molina, at plaintiff's request, proceeded to serve the judgment by publication in the news-

---

[2] "Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.

"Only by virtue of a recorded instrument may another later instrument, also recorded, be invalidated to the prejudice of a third person, with the exceptions mentioned in article 389.

". . . . . . . . . ."

paper El País *for the statutory period, said judgment becoming final and unappealable. . ."* (Italics ours.) It is true that in this entry the Registrar set forth that the judgment was final and unappealable but the inexactness of this averment is manifest inasmuch as the Registrar bases that conclusion on the mere fact that notice of the judgment was given by publication during the statutory period, without taking into account that the judgment was not final and unappealable until after thirty days from the last publication. Based on that false premise he continues in the aforesaid entry, ". . . and the fifteen days from publication, within which the defendant was bound to execute the aforesaid deed in favor of the plaintiff, having elapsed without the defendant having done so, as shown by plaintiff's motion, the marshal, in compliance with the judgment. . ." executed deed No. 5 of October 3, 1940, explained by deed No. 6 of November 24, 1940, both before Notary Justo A. Casablanca.

If the Tartak-Bejos spouses had examined this eleventh entry they would have learned that properties Nos. 4002 y 6749 were conveyed by the marshal to José F. González before the judgment had become final and unappealable; and consequently, González did not acquire a valid title. Since González held no such title according to the registry, the title of María Luisa Amador and the title of the Román-Sapia spouses were likewise void and, of course, the title which the latter conveyed to the Tartak-Bejos spouses was equally defective.

The Registrar's error in characterizing the judgment as final and unappealable does not alter the status of said properties in the registry, for only the facts appearing from the registry and not the conclusions of the Registrar determine the validity of recorded titles. Judgment of the Supreme Court of Spain of June 14, 1923.

Undoubtedly the defect appeared from the registry but it appeared in the record of a farm other than that which Salibe Tartak and Bernarda Bejos had acquired. And since

the sixteenth entry of property 4002 was not presented in evidence, from which entry it appeared that the eleventh inscription of property 4196 set forth at length the procedure followed in suit 32598, it is clear that the trial judge found no support in the evidence to conclude that the defendants were not third parties and erred in thus deciding.

Conscious of the error committed by the lower court the plaintiff filed with her brief a certified copy of entry No. 16 of property 4002, thus trying to supply the missing link to connect the entries of said record 16 with the 11th entry of property 4196 in which, as we have seen, the defect in the title acquired by José F. González by virtue of suit 32598 clearly appears. Consequently, if we admitted such certificate, it would have to be concluded that the defendants-appellants were not third-party mortgagees.

Considering the extraordinary attendant circumstances, if said evidence were not somehow presented in this case, we would be closing our eyes to the fraud of which Clemencia Cruz was a victim in suit 32598 brought by González, and we would permit the defendants to benefit to plaintiff's prejudice by her attorney's error or inadvertence in failing to introduce said evidence in the court *a quo*. It is clear that if the certificate were admitted it would then be manifest that the defendants are not third parties. In that case, the status of the properties in controversy would be the same they had after the dissolution of the marriage and before judgment was entered in case 32598. In other words, the properties would belong to a conjugal partnership dissolved since the decree of divorce became final and unappealable, but pending liquidation. Under such circumstances it would have to be decided that González was not authorized to sell specific properties of the conjugal partnerships, for since the latter had not been liquidated, he could alienate only the share which might belong to him in the undivided estate of the partnership after liquidation.

■■ It is true that the lower court found that the properties were purchased with money belonging separately to Clemencia Cruz, but we have already seen that pursuant to the registry the property is presumed to be community property and the oral evidence presented by the plaintiff consisting of her testimony alone is not sufficient to overcome said presumption. As we said in *Blanes* v. *González*, 60 P.R.R. 553, when there is a controversy regarding the conjugal or separate nature of certain properties acquired during the marriage and the interest of third parties who might be prejudiced by the decision is involved, the proof required to overcome the presumption of community property must be stronger and more persuasive than when the controversy is circumscribed to husband and wife. In cases like the present one, the mere testimony of the wife to the effect that the properties in controversy were purchased with money she had acquired prior to her marriage, especially when her statement to that effect is considered in the light of certain other averments in her testimony, is insufficient to destroy the presumption contemplated by § 1307 of the Civil Code.[3]

Since the lower court, on the basis of the evidence introduced, erred in declaring that the defendants-appellants and

[3] Plaintiff's deposition seems to indicate that the $20,000 were brought to the marriage shortly after its celebration. However, it appears from the record that the attorney-in-fact to whom she claims that she delivered the money for investment in real estate, was designated by deed No. 5 of March 8, 1927 before Notary Jacinto Texidor, that is, four years after the marriage; that property No. 4196 described in the complaint under letter "A" was acquired by deed of August 13, 1931; that the property under letter "D", No. 5175 was purchased by deed No. 41 of April 5, 1930 and that property No. 5193 marked with the letter "E" was acquired by giving in payment on a mortgage in favor of the conjugal partnership constituted by a deed of December 7, 1927. The record does not disclose the dates on which the remaining properties were acquired except the share which in property "G" González obtained by inheritance from his grandmother, Lina Llanos.

Furthermore, Clemencia Cruz testified that she delivered said money to her husband and during cross-examination she says that she delivered it to the attorney-in-fact. All of these circumstances are significant, especially if it is considered that those statements were made after the death of José F. González, the person who would have been best fitted to challenge them.

their predecessors in title were not third-party mortgagees, the judgment must be reversed and the case remanded to said court, in which the certified copy of record 16 of property 4002 may be presented in evidence and then the liquidation of the conjugal partnership may be proceeded with in order to be able to determine the rights of the parties.[4]

Since plaintiff's right depends on the outcome of such liquidation, we must refrain from discussing the errors she assigned in support of her appeal.

After the liquidation, judgment will be entered consistent with the principles set forth in this opinion.

---

[4] In order to make the liquidation, the lower court will permit the parties to amend the pleadings as may be pertinent.